UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

**GEORGE STEVEN DUBBA, et al.**          Case No. 2:06-CV-0027-DLB

**Plaintiffs,**          Judge:  David L. Bunning

v.

**OHIO VALLEY AFM, INC.**

**Defendant**.

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION OF DEFENDANT OHIO VALLEY AFM, INC. FOR RELIEF FROM THE AGREED ORDER ENTERED FEBRUARY 9, 2006 REGARDING MAINTENANCE OF THE STATUS QUO**

The Motion of Defendant Ohio Valley AFM, Inc. for Relief From the Agreed Order Entered February 9, 2006 Regarding Maintenance of the Status Quo should be denied, because Plaintiffs have not altered the status quo by their use of money orders to pay their attorneys' fees. Plaintiffs' use of the cash flow from their businesses to pay attorneys' fees does not violate either the Franchise Agreement or the Agreed Order.  Furthermore, even if it did, which Plaintiffs deny, the relief requested by Defendant -- termination of the Franchise Agreements -- is extreme and unwarranted.

Three of the Plaintiffs, George Steven Dubba, Ramu Kesireddy and Mohan Tokala, did pay a portion of their legal fees through money orders written at their stores.  The money orders were reported openly by the Plaintiffs in their daily reports for what they are -- legal fees paid to Taft, Stettinius & Hollister LLP.  The money orders were processed through their Store Accounts, which are managed and controlled by Defendant Ohio Valley.  By issuing money orders, Plaintiffs intended to pay their legal fees through the cash flow generated by the

operation of their stores. This is revenue earned from the sale of inventory paid for by the Plaintiffs.

The use of money orders to pay legal fees does not disturb the status quo.[1] Franchisees have used money orders to pay store expenses in the past, both recurring and one-time expenses. For example, Plaintiff Steven Dubba uses a money order every week to pay one of his vendors, Topicz. He also has used money orders to pay his annual corporate taxes, without objection from Ohio Valley. Declaration of George Steven Dubba at ¶¶ 2-4. Plaintiff Nitaben Patel uses money orders to pay monthly premiums for health insurance coverage for herself and her family. Declaration of Nitaben Patel at ¶¶ 2-3. Ohio Valley has processed these money orders without comment. *Id.*

The Franchise Agreement does not speak directly to the use of money orders nor does it address whether franchisees' legal expenses incurred in connection with their franchises are "normal business expenses." Defendant asserts that Plaintiffs have violated Section 13.3 of the Franchise Agreement by their use of money orders to pay legal fees. However, Section 13.3 of the Franchise Agreement imposes obligations on the franchisor, not on the franchisee. This section requires Ohio Valley to pay out of the Store Account certain enumerated expenses and "all other obligations of Franchisee incurred in the normal business of the Store." This section places no obligations or requirements on the Plaintiffs; hence, they cannot have violated it. Moreover, Section 13.3 does not say anything about money orders.

The phrase, "normal business of the Store" is not defined in the Franchise Agreement. Therefore, the words should be given their ordinary meaning. The legal fees incurred by

---

[1] Ohio Valley's view of maintaining the status quo is apparently one-sided. On March 24, 2006, with just 48-hours notice, Ohio Valley required franchisees to post a bond and a personal guarantee to continue selling Ohio lottery tickets, a dramatic change from the historical situation in which Ohio Valley posted a blanket bond covering all

Plaintiffs are related to the business of their stores. The legal services relate to the franchise business, not to personal or family issues. Plaintiffs were forced into litigation by Ohio Valley's breaches of the Franchise Agreements and of their fiduciary duty to Plaintiffs.

The payment of legal fees is an expense similar to the payment of corporate taxes. The fact that it is not a recurring expense or a monthly vendor payment does not mean that it is not a "normal business expense." Corporate income taxes are an example of a "normal business expense," similar to legal fees, that occur infrequently and are not directly related to daily operations, but are related to the business. Further, whether or not any other franchisees have ever used money orders in a similar way in the past is not dispositive of the issue of whether the money order was used for a business expense. Thus, the existing relationship between the parties permits the franchisees to pay business expenses, including legal fees, with money orders. Plaintiffs have not altered the status quo.

The Agreed Order does not speak to Plaintiffs' actions. By the Agreed Order Defendant agreed, as an alternative to a formal temporary restraining order, not to terminate the Franchise Agreements or take other action adverse to Plaintiffs.

Ohio Valley's position with respect to the payment of legal fees exposes Ohio Valley's feudal philosophy toward the franchise relationship. Franchisees are required to deposit 100% of all revenue and receipts generated from the operation of their stores into their Store Account, that is completely controlled by Ohio Valley. Franchise Agreement, § 13.1. They are only permitted to pay themselves a manager's salary, the amount of which is determined by Ohio Valley and is currently $500 per week. Franchise Agreement, § 25.6. Other than this small salary, they have no access to the money generated by their own stores. Ohio Valley uses that money, interest-

---

AmeriStop stores, and charged each store a pro-rata portion of the premium. *See* correspondence between counsel attached as Exhibit 1.

{W0678482.1}                                                                 3

free. Franchise Agreement, 13.4. As the briefing on Plaintiffs' Motion for a Preliminary Injunction shows, Ohio Valley also misuses the money in the Store Accounts, incurring late fees and overdraft charges and using the money to pay the expenses of other stores.

Ohio Valley's attitude that the revenue generated by the operation of the Plaintiffs' stores belongs to Ohio Valley, not to the Plaintiffs, belies any claim that Plaintiffs are being permitted to operate as independent businessmen. Independent businessmen can decide whether or not to incur legal fees related to the operation of their stores. Ohio Valley seeks to deny Plaintiffs that right, once again treating the Plaintiffs like employees, not independent businessmen.

If franchisees are not permitted to use the cash flow from their store for legal fees, then franchisees would be effectively precluded from seeking the advice of counsel with respect to the franchise relationship. Any provision that expressly stated that franchisees are not permitted to seek legal counsel would surely be void as against public policy. *See Chapman v. Adia Services, Inc.*, 116 Ohio App. 3d 354, 688 N.E.2d 604, 609-610 (Ohio App. 1997) (clear public policy in Ohio to encourage individuals to consult an attorney and obtain adequate legal representation)(attached as Exhibit 2). Ohio Valley is seeking to preclude such consultation through its control of the Store Account. Any interpretation of the Franchise Agreement to preclude the payment of legal fees from operating revenue is equally against public policy.

Ohio Valley asserts that the payment of a money order is an extension of credit by Ohio Valley. Yet, Ohio Valley has not established that Steve Dubba, Ramu Kesireddy, or Mohan Tokala have negative cash flow on a monthly basis. The monthly account statements are prepared by Ohio Valley and their accuracy has been contested by Plaintiffs, who have demanded a full accounting. The monthly calculation of whether a franchisee's account is in "deficit" includes long-term liabilities and charges for "paper" losses, including depreciation.

{W0678482.1} 4

Depreciation alone is charged at almost $1,000 per month, on monthly revenue of $50,000 to $60,000.

Finally, even if Defendant was correct that the use of money orders to pay legal fees is a violation of the status quo or the Franchise Agreement, which Plaintiffs deny, the relief requested by Ohio Valley -- termination of the Franchise Agreements -- is extreme, and against public policy. *See*, *Chapman*, 688 N.E.2d at 609-10 (termination of at-will employee for consulting attorney against public policy). Again, the requested relief is a reflection of Ohio Valley's dictatorial attitude towards its franchisees. It seeks the "death penalty" for what it labels as a violation of the Franchise Agreement, rather than notification of the alleged violation and an opportunity for the franchisees to cure. If the Court finds that the payment of legal fees out of the Store Accounts is a violation of the status quo, then the only appropriate relief is to require the Plaintiffs to deposit into their Store Accounts an equal amount of money to reimburse for the money orders.

        Respectfully submitted,

/s/ Marcia V. Andrew
Robert B. Craig (KBA No. 15590)
TAFT, STETTINIUS & HOLLISTER LLP
1717 Dixie Highway, Suite 340
Covington, KY  41011-4704
Phone:  (859) 331-2838

Marcia V. Andrew (Pro Hac Vice)
John R. Potter (KBA No. 90690)
TAFT, STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202-3957
Phone:  (513) 381-2838

Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on March 28, 2006, this document was served upon counsel of record through this Court's CM/ECF system.

/s/ Marcia V. Andrew